OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 8, 1999

The Honorable Frank Madla
Chair, Senate Committee on
   Intergovernmental Relations
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0013

Re: Applicability of section 130.008 of the Education Code, which allows high school students to obtain joint credit for certain public junior college courses, to persons attending a private school (RQ-1222)

Dear Senator Madla:

You have requested our opinion regarding the construction of section 130.008 of the Education Code. You ask whether that provision, which permits a public junior college to offer courses in which high school students may enroll, is applicable to students attending private schools. We conclude that it is not, but that the legislature may amend the statute to make such benefits available to non-public school students consistent with the First Amendment to the United States Constitution.

Section 130.008 provides, in relevant part:

(a) Under an agreement with a school district, a public junior college may offer a course in which a student attending a high school operated by the school district may enroll and for which the student may simultaneously receive both:

(1) course credit toward the student's high school academic requirements for graduation; and

(2) course credit as a student of the junior college, if the student has been admitted to the junior college or becomes eligible to enroll in and is subsequently admitted to the junior college.

(b) The junior college may waive the tuition fee for a high school student enrolled in a course for which the student may receive joint credit under this section.

TEX. EDUC. CODE ANN. § 130.008(a), (b) (Vernon Supp. 1999). Under the terms of this provision, a public junior college may offer courses for simultaneous credit only to a student "attending a high school operated by [a] school district," and only "under an agreement with [the] school district." Since a private school is not "operated by a school district," the statute as presently written can have no application to a student attending a private school.

You also ask whether section 130.008 could constitutionally be amended to apply to "all Texas high school students." The issue thus raised is whether the Establishment Clause of the First Amendment to the United States Constitution would prohibit the application of the amendment to students who attend sectarian schools.

The Establishment Clause of the Constitution says merely that "Congress shall make no law respecting an establishment of religion." While the Clause is directed at Congress, it applies equally to state and local governmental bodies. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Modern Establishment Clause law as applied to public education derives from the United States Supreme Court's 1971 opinion in *Lemon v. Kurtzmann*, 403 U.S. 602 (1971). *Lemon* set forth a three-part test to determine the validity of a particular statute: 1) it must have a secular legislative purpose; 2) its primary effect must be one that neither advances nor inhibits religion; and 3) it must not foster an excessive governmental entanglement with religion. *Id.* at 612-13. In *Aguilar v. Felton*, 473 U.S. 402 (1985), and its companion case, *School District of Grand Rapids v. Ball*, 473 U.S. 373 (1985), the Court invalidated two "shared time" programs that involved sending public school teachers into parochial schools to provide remedial and "enrichment" education to disadvantaged children. The Court concluded that, although such programs served a purely secular purpose, they failed the other two prongs of the *Lemon* test because they had sectarian "effects," and because they resulted in "excessive entanglements." Like the programs in *Aguilar* and *Ball*, it seems clear that the kind of amendment you propose would serve a secular legislative purpose—to make public junior college courses available to all Texas high school students—and therefore comply with the first requirement of the *Lemon* test.

The programs struck down in *Aguilar* and *Ball* were conducted on the premises of parochial schools, and it is apparent that these cases turned on the matter of location. Indeed, in the subsequent case of *Agostini v. Felton*, 117 S. Ct. 1997 (1997), the Court noted that "*Aguilar* implied that providing the services off-campus is entirely consistent with the Establishment Clause." *Id.* at 2013. Thus, even under *Aguilar* and *Ball*, a public junior college would in all likelihood be constitutionally permitted to offer joint-credit courses to high school students so long as such courses were not conducted on parochial school premises.

In the recent case of *Agostini*, however, the Supreme Court rejected the assumptions that "any public employee who works on a religious school's premises is presumed to inculcate religion in her work"; that "the presence of public employees on private school premises creates an impermissible symbolic union between church and state"; and that "any public aid that directly assists the educational function of religious schools is invalid." *Id.* at 2001. So long as the "aid is allocated on the basis of neutral, secular criteria that neither favor nor disfavor religion, and is made

available to both religious and secular beneficiaries on a nondiscriminatory basis," it is "less likely to have the effect of advancing religion." *Id.; see also Helms v. Picard*, 151 F.3d 347, 358 (5th Cir. 1998). We assume that, under the kind of amendment you propose, the joint-credit courses would be allocated to students on the basis of neutral, secular criteria that neither favor nor disfavor religion, and would be made available to both religious and secular beneficiaries on a nondiscriminatory basis. Under such circumstances, the amendment of the kind you suggest would satisfy the second prong of the *Lemon* test: that its effect is neither to advance nor inhibit religion.

The third requirement of the *Lemon* test—that a statute not foster excessive government entanglement with religion—has also been modified by *Agostini*. The "entanglement" question is now treated as "an aspect of the inquiry into a statute's effect." *Agostini*, 117 S.Ct. at 2015. In order to find "excessive entanglement," it is at present necessary to show that a program would require "pervasive monitoring by public authorities." *Id.* The joint-credit courses of which you inquire would presumably not be conducted on parochial school premises. Nor does your proposal appear to vest public junior colleges with any authority over the parochial schools. Thus it does not appear that there would arise a need for monitoring of any kind, "pervasive" or otherwise. Although we cannot resolve facts in an attorney general's opinion, it would appear, on the basis of the information you have furnished, that the amendment you propose would satisfy the third prong of *Lemon*—that it not foster excessive governmental entanglement with religion. We conclude that the legislature may amend section 130.008 to extend joint-credit public junior college courses to private school students consistent with the Establishment Clause of the First Amendment to the United States Constitution.

We emphasize that we are not here passing upon the validity of any particular legislation as any proposed bill is subject to amendment and any opinion from this office would be premature. This opinion, we hope, offers you some guidance as to what is permissible under the Establishment Clause of the First Amendment and leaves the details of enactment to the legislature.

## SUMMARY

At present, a public junior college may offer courses for simultaneous high school-junior college credit only to a student "attending a high school operated by a school district," and as a result, may not offer such courses to private school students. The legislature may amend section 130.008 of the Education Code to extend joint-credit public junior college courses to private school students consistent with the Establishment Clause of the First Amendment to the United States Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General